*In the United States District Court*
*for the Northern District of Illinois*
*Eastern Division*

| | |
|---|---|
| Matthew Goodwin, | |
| plaintiff, | |
| – v – | |
| Board of Trustees of Illinois Community College District No. 512 (a/k/a William Rainey Harper College), | |
| defendant. | **Jury demanded** |

# Complaint of USERRA Retaliation and Violations

<u>Nature of action</u>

1.      This action concerns alleged violations of the Uniformed Services Employment and Reemployment Rights Act (USERRA).

<u>Parties</u>

2.      Defendant is the Board of Trustees of Illinois Community College District No. 512 (a/k/a William Rainey Harper College).

3.      Plaintiff is Matthew Goodwin, a member of the United States Army Reserve.

<u>Mr. Goodwin's employment with defendant</u>

4.      Around February 2009, defendant hired Mr. Goodwin as a part-time police officer.

5.      When defendant hired Mr. Goodwin as a part-time police officer, defendant knew that Mr. Goodwin was actively serving in the United States Army Reserve.

6.      Mr. Goodwin satisfactorily performed his duties as a part-time police

officer for defendant.

7.      Around April 27, 2009, defendant hired Mr. Goodwin as a full-time employee entitled to benefits and protections under its collective bargaining agreement with the Illinois Council of Police.

8.      When defendant hired Mr. Goodwin as a full-time police officer, defendant knew that Mr. Goodwin was actively serving in the United States Army Reserve.

9.      Sometime around October 2009, Mr. Goodwin notified defendant that the United States Army Reserve had scheduled him for a military training that was to take place at the time defendant's President was to be installed.

10.     In response, defendant's Deputy Chief of Policy, Paul Lebreck, called Mr. Goodwin into a meeting and asked him to contact the United States Army Reserves to request that his orders be revoked.  See 10/23/2009 e-mails with Lebreck, attached as Exhibit A to this Complaint.

11.     As defendant had asked, Mr. Goodwin requested the United States Army Reserves to revoke his orders.  See Exhibit A.

12.     The United States Army Reserve excused Mr. Goodwin from the two-week training but made clear to him that he would have to undergo four weeks of training in 2010 to make-up for the two week training that he would be missing.

13.     Defendant then was informed by Mr. Goodwin that the United States Army Reserve had excused him from the scheduled military training but would require him to attend four weeks of military training in 2010 to make up for this training that it had cancelled at defendant's request.

14.     Around the end of December 2009, defendant conducted its first

performance evaluation of Mr. Goodwin.

15.       In its performance evaluation, defendant assessed Mr. Goodwin as "meet expectations". <u>See</u> the performance evaluation attached as Exhibit B to this Complaint.

16.       Also in this performance evaluation, defendant found that Mr. Goodwin "has the ability to be a leader within our organization". <u>See</u> Exhibit B at page 5.

17.       Nowhere in this performance evaluation and at no point during its meeting with Mr. Goodwin to review this evaluation did defendant mention or allude to any alleged "misconduct" or performance issues.

18.       During this meeting in which Mr. Goodwin's performance evaluation was discussed, Deputy Chief Lebreck informed Mr. Goodwin that defendant would not permit him to attend a forty-hour basic investigator's course because Mr. Goodwin would be attending required military training throughout the year. <u>See</u> the 12/23/2009 handwritten note on the North East Multi-Regional Training, Inc. print-out, attached as Exhibit C to this Complaint.

19.       When defendant informed Mr. Goodwin that it was cancelling his basic investigator's course training, defendant knew that Mr. Goodwin was required to undergo additional military training in 2010 because of Army Reserve had excused Mr. Goodwin from a 2009 military training that was to take place during defendant's President's installation.

<u>The United States Army Reserve requires Mr. Goodwin's service</u>

20.       On or about January 13, 2010, Mr. Goodwin's Team Leader (Officer Thomas Koch) learned from Mr. Goodwin via the e-mail attached to this

Complaint as Exhibit D that the United States Army Reserves had ordered Mr. Goodwin to attend military training March 9-14, April 10-14, and July 15-31, 2010.

21.     On or about February 9, 2010, Team Leader Koch again learned from Mr. Goodwin that Mr. Goodwin would be on military leave from defendant from March 15 to 21, 2010, because the United States Army Reserves had scheduled Mr. Goodwin for military duty during that time.  See Exhibit E to this Complaint.

22.     Then in approximately April 2010, defendant learned from Mr. Goodwin that he would need to be on military leave from approximately June 2010 through June 2011 because the United States Army Reserve was deploying him during that time for Operation Enduring Freedom.

23.     In preparation for his deployment, the United States Army Reserves required that Mr. Goodwin attend mandatory exercises and training, and defendant learned from Mr. Goodwin of his required attendance at those military exercises and training.

Defendant retaliates against Mr. Goodwin because of his required military service

24.     Soon after Mr. Goodwin notified defendant that the United States Army Reserves was deploying him, defendant expressed to Mr. Goodwin its disapproval of his required military absences from defendant.  See the 4/28/2010 and 5/5/2010 e-mails exchanged with Team Leader Koch (Exhibits F and G respectively).

25.     In response, defendant received from Mr. Goodwin a USERRA fact sheet on military leave notice requirements and heard from Mr. Goodwin that he

"would be happy to sit down with [Team Leader Koch] and go over any questions that [he] might have on what the sheet outlines". <u>See</u> the 5/8/2010 e-mail contained in Exhibit G.

26. From June 2010 to February 2011, Mr. Goodwin was on military leave and was serving with the 75th Mission Command Training Division in Arlington Heights, IL

27. During this military leave, defendant neither accrued Mr. Goodwin's benefit time nor sent Mr. Goodwin instructions on how he could pay his portion of defendant's insurance premiums as promised. <u>See</u> Mr. Goodwin's 9/22/2010 e-mail to defendant attached as Exhibit H to this Complaint.

28. Then, in approximately November 2010, defendant learned from Mr. Goodwin that the United States Army Reserves would be deploying him overseas from approximately February 2011 through approximately February 2012.

29. From February 2011 to February 2012, Mr. Goodwin was deployed with the United States Security Coordinator to Israel and the Palestinian Authority and was on military leave from defendant.

30. Prior to Mr. Goodwin's starting this deployment, defendant received an inquiry from Mr. Goodwin and/or his union about defendant placing him on part-time status "to solve the problem of [Mr. Goodwin] holding a position that [defendant] can't fill…" and to "allow the [Police Department] to hire someone to replace [Mr. Goodwin] while [he] is gone". <u>See</u> 2/7/11 e-mail from Mr. Goodwin to Deputy Chief Lebreck (Exhibit I).

31.    Defendant rejected Mr. Goodwin's inquiry and stated "there is no interest, from our end, to pursue this option". See 2/8/11 e-mail contained in Exhibit I.

32.    Mr. Goodwin's union responded by informing Mr. Goodwin that he was "now a probationary employee" and that he would have to finish his probation period when he returns from military leave. See 2/8/11 e-mail from the Illinois Council of Police (Exhibit J).

33.    Defendant may have hired a police officer to replace Mr. Goodwin while he was on military leave for defendant from June 2010 through February 2012. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

Defendant fires Mr. Goodwin the day he returns to work from military leave

34.    In approximately February 2012, defendant learned from Mr. Goodwin that he had returned to the United States and received an inquiry from Mr. Goodwin as to the date he was to return to work. See 2/28/12 e-mail to Deputy Chief Lebreck (Exhibit K).

35.    Defendant informed Mr. Goodwin that, to be reemployed, he had to submit a re-employment letter to defendant. Defendant received such a re-employment letter from Mr. Goodwin around March 13, 2012. See the 3/13/12 e-mails (Exhibit L).

36.    Before Mr. Goodwin returned to work for defendant, defendant's Chief of Police Michael Alsup boasted that he had ruined Mr. Goodwin's chances of being hired by Lake County Community College. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further

investigation and/or discovery.

37.     Around mid-day of Mr. Goodwin's first day back at work at defendant, Chief Alsup called Mr. Goodwin into his office and told Mr. Goodwin that defendant was firing him because defendant considered Mr. Goodwin to be on probation.

38.     During this May 29, 2012, firing meeting, defendant did not cite any misconduct nor any performance issues as reasons for its decision to fire Mr. Goodwin.

39.     During this May 29, 2012, firing meeting, defendant's Chief Alsup told Mr. Goodwin that defendant would not put into writing defendant's firing of Mr. Goodwin's nor its alleged reasons for this decision.

40.     After the meeting in which defendant fired Mr. Goodwin, Mr. Goodwin summarized the meeting in an e-mail he sent to defendant and which is attached as Exhibit M to this Complaint.

41.     In response, defendant sent Mr. Goodwin the attached termination letter in which defendant, for the first time, notified Mr. Goodwin that it was alleging his performance did not meet defendant's expectations. See the 5/29/2012 termination letter from Chief Alsup (Exhibit N).

42.     Approximately three weeks later, on June 21, 2012, defendant's President, Kenneth Ender, and its Director of Human Resources, Roger Spayer, met with Mr. Goodwin to discuss defendant's firing him.

43.     During this June 21, 2012, meeting President Ender told Mr. Goodwin that he believed there was information in Mr. Goodwin's personnel file that reflected

negatively on him.

44.     Defendant's President otherwise failed to give Mr. Goodwin any reason for its firing him on his first day back to work following his military leave.

45.     Immediately following this meeting with President Ender and HR Director Spayer, Mr. Goodwin requested his personnel file from defendant's Police Department.

46.     Defendant's Police Department refused to give Mr. Goodwin a copy of his file but instead instructed Mr. Goodwin to contact Human Resources, which Mr. Goodwin did.

47.     Over the next few weeks, defendant's Human Resources Department and Director Spayer received several inquiries from Mr. Goodwin about the status of defendant's sending him a copy of his personnel file.

48.     Approximately four to five weeks after having requested his personnel file at the suggestion of President Ender and HR Director Spayer, defendant finally did send Mr. Goodwin a copy of his personnel file.

49.     The personnel file that defendant sent to Mr. Goodwin did not contain any information about any alleged misconduct or performance issues.

50.     The summer of 2012, defendant's Chief of Police was contacted by an ombudsman in the Employer Support of the United States Army Guard and Reserve regarding defendant's firing Mr. Goodwin.

51.     In response, Director Spayer, Chief Alsup, and a third individual participated in a telephone conference with the United States Army Guard and Reserve ombudsman during which defendant said that it fired Mr. Goodwin

because:

a.      defendant supposedly interpreted the probationary fifteen months to be working months (and not calendar months);

b.      defendant supposedly required an end-of-probation evaluation of Mr. Goodwin; and

c.      defendant was supposedly investigating Mr. Goodwin for alleged misconduct.

Defendant's adverse treatment of another employee member of the military

52.      Defendant has discriminated and/or retaliated against other employee members of the military by requiring these other employees to take personal leave and/or vacation days for work absences from defendant due to his or her military commitments. The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

Venue

53.      Mr. Goodwin worked for defendant in the Northern District of Illinois, and this cause of action arose in that District. Venue is proper by 38 U.S.C. §4323(c)(2) and by §1391(b) of the Judicial Code [28 U.S.C. §1391(b)].

Jurisdiction

54.      This Court has jurisdiction under the Uniformed Services Employment and Reemployment Rights Act [38 U.S.C. §4323(b)(3)] and under §1331 of the Judicial Code [28 U.S.C. §1331].

## Count I – USERRA Violation of Firing without Cause

55.     Mr. Goodwin realleges paragraphs 1 through 54 of this Complaint.

56.     Defendant fired Mr. Goodwin without cause.

57.     This firing of Mr. Goodwin without cause violated USERRA, 38 U.S.C.

§4316(c).

58.     As a proximate result of this firing without cause in violation of USERRA,

Mr. Goodwin lost his job, lost wages, and lost employment benefits.

***Wherefore***, plaintiff Matthew Goodwin prays that this Court:

a.      Order a settlement conference pursuant to Federal Rule of Civil

Procedure 16 to assist him and defendant to settle this case;

b.      Order defendant to reinstate Mr. Goodwin to his position (or a

comparable position) or, in the alternative, to pay Mr. Goodwin for a

reasonable time into the future the compensation and benefits he would

have earned in such a position;

c.      Award Mr. Goodwin back pay, lost employment benefits, and other

compensation lost to him as a result of defendant's having fired him

without cause in violation of USERRA;

d.      Award Mr. Goodwin liquidated damages on the award of back pay,

lost employment benefits, and other compensation lost to him as a result

of defendant's firing him without cause in violation of USERRA;

e.      Award Mr. Goodwin his reasonable attorney's fees, expert witness

fees, expenses, and costs of this action; and

f.      Award Mr. Goodwin such other relief as the Court deems

appropriate.

## Count II – USERRA Violation of Acts of Reprisal

59.        Mr. Goodwin realleges paragraphs 1 through 54 of this Complaint.

60.        By the actions and omissions alleged, defendant committed acts of reprisal against Mr. Goodwin in violation of USERRA.

61.        As a proximate result of these acts of reprisal, Mr. Goodwin lost his job, lost wages, and lost employment benefits.

*Wherefore*, plaintiff Matthew Goodwin prays that this Court:

a.        Order a settlement conference pursuant to Federal Rule of Civil Procedure 16 to assist him and defendant to settle this case;

b.        Order defendant to reinstate Mr. Goodwin to his position (or a comparable position) or, in the alternative, to pay Mr. Goodwin for a reasonable time into the future the compensation and benefits he would have earned in such a position;

c.        Award Mr. Goodwin back pay, lost employment benefits, and other compensation lost to him as a result of defendant's having committed acts of reprisal against him in violation of USERRA;

d.        Award Mr. Goodwin liquidated damages on the award of back pay, lost employment benefits, and other compensation lost to him as a result of defendant's acts of reprisal;

e.        Award Mr. Goodwin his reasonable attorney's fees, expert witness fees, expenses, and costs of this action; and

f.        Award Mr. Goodwin such other relief as the Court deems appropriate.

-11-

## Count III – USERRA Violation of Denial of Benefits

62.        Mr. Goodwin realleges paragraphs 1 through 54 of this Complaint.

63.        Defendant denied Mr. Goodwin various benefits.

64.        This denial of benefits violated USERRA.

65.        As a proximate result of this denial of benefits in violation of USERRA, Mr. Goodwin lost employment benefits.

*Wherefore*, plaintiff Matthew Goodwin prays that this Court:

    a.        Order a settlement conference pursuant to Federal Rule of Civil Procedure 16 to assist him and defendant to settle this case;

    b.        Award Mr. Goodwin lost employment benefits and other compensation lost to him as a result of defendant's having denied him benefits in violation of USERRA;

    c.        Award Mr. Goodwin liquidated damages on the award of lost employment benefits and other compensation lost to him as a result of defendant's having denied him benefits in violation of USERRA;

    d.        Award Mr. Goodwin his reasonable attorney's fees, expert witness fees, expenses, and costs of this action; and

    e.        Award Mr. Goodwin such other relief as the Court deems appropriate.

David L. Lee, ARDC #1604422                       Matthew Goodwin,
LAW OFFICES OF DAVID L. LEE                        plaintiff,
53 W. Jackson Blvd., Suite 505
Chicago, IL 60604
312-347-4400                            By:    s/David L. Lee
d-lee@davidleelaw.com                       David L. Lee, his attorney